IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2000

## LAVERNE M. LAIN, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 29,701     L. Craig Johnson, Judge**

_____

**No. M2000-00605-CCA-R3-PC - Filed May 11, 2001**

_____

The petitioner appeals from the denial of his post-conviction petition, contending that his guilty plea was not entered voluntarily and intelligently and that he received the ineffective assistance of counsel. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Timothy S. Priest, Winchester, Tennessee, for the appellant, Laverne M. Lain, Jr.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Counsel for the State; and Charles Michael Layne, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Laverne M. Lain, Jr., appeals as of right from the denial of his post-conviction petition. The petitioner was indicted for aggravated sexual battery, a Class B felony. On May 19, 1998, he pled guilty to attempted aggravated sexual battery, a Class C felony, and agreed to be sentenced as a Range III, persistent offender to ten years at forty-five percent. The petitioner timely filed a post-conviction petition, and an evidentiary hearing was held on February 8, 2000, at the conclusion of which the trial court denied the petitioner relief. The petitioner contends (1) that his guilty plea was not entered voluntarily and intelligently and (2) that he received the ineffective assistance of counsel.

At the guilty plea hearing, the state said that it would have presented the following evidence at trial: A ten-year-old victim would have testified that the petitioner put his hands on her vagina. Officer Tracy Alexander, who interviewed the petitioner, would have testified that the petitioner admitted to committing the act but gave various explanations for his actions.

At the evidentiary hearing, the petitioner testified as follows: He was forty-four years old, married, and had two daughters. He could read print writing pretty well but could not read cursive writing well. He was a great-uncle of the ten-year-old victim and lived about two or three miles from her. One day when he got home from work, his wife told him that their children were having a problem at school. At the school, Officer Tracy Alexander accused him of sexually molesting the victim, which he denied. Officer Alexander wrote something on a paper and asked him to sign it. He said that he could not read it because it was in cursive and asked Officer Alexander what it said. Officer Alexander told him that it was what they had been talking about and not to worry about it. Because he had told Officer Alexander that he had not done anything, he signed the statement. He was arrested, and the public defender was appointed to represent him.

The petitioner testified that he talked to his attorney three times before his case went to the grand jury and that he told his attorney that he was innocent and that he did not read the statement he had signed. He said that his attorney did not request a preliminary hearing and never discussed with him moving to suppress his statement. After he was indicted, he received a letter from the victim, which included the statement, "I am sorry I told them what Sharon told me to say." He asked his wife if anyone helped the victim write the letter, and she said that no one had. He made copies of the letter and gave them to his attorney.

The petitioner testified that his attorney brought paperwork to him before trial but that he gave it to his wife because he did not have time to read it overnight. He stated that his attorney told him that the possible ranges of punishment were twenty years to life in prison but said that if the case went to trial, he would get life in prison without parole. His attorney also said that if the case went to trial, he would not cross-examine the victim or any of the other witnesses. The petitioner stated that when he entered his guilty plea, the judge asked him, "Do you have any questions, second thoughts, hesitancy, reservations, or anything you want to ask or say about the proceeding?" He responded, "Anything I say ain't going to help me out," meaning that he had no choice but to plea guilty because his attorney was not going to cross-examine any witnesses and if convicted by a jury, he would get life in prison.

On cross-examination, the petitioner acknowledged that at the guilty plea hearing, he stated that no one had done anything to cause him to plead guilty against his will and that he was entering the plea voluntarily of his own free will. The petitioner admitted that his attorney discussed with him the possibility of receiving a Range II sentence because of prior convictions and that a conviction on aggravated sexual battery required service of eighty-five percent of the sentence. The petitioner acknowledged that his signed statement said that he had the victim lie on a bed naked and that he then put his hand on her vagina and told her not to let a boy do this to her because it would cause a rape. He stated that the statement was false and that he told Officer Alexander only that he was innocent.

Dale Conn, an investigator for the public defender, testified as follows: He investigated the petitioner's case, which included copying the petitioner's entire file from the district attorney's office and talking with Tracy Alexander and the petitioner's wife. He also met with the petitioner three

or four times, and they discussed the contents of the file, including the petitioner's confession. They also talked about the victim's subsequent letter and the possibility of Range II sentencing because of the petitioner's prior convictions. Mr. Conn testified that he was present on two occasions when the petitioner and his attorney met, and he stated that the attorney never guaranteed any sentence, never mentioned life in prison, and never refused to cross-examine any witnesses.

On cross-examination, Mr. Conn testified that the petitioner had a limited ability to read and write. He said that the petitioner denied touching the victim while she was naked but said that he may have touched her vagina over her clothes. He stated that a letter signed by the victim stated, "I miss you a lot. I hope you will be out soon. I am sorry that Sharon lied about you. I am sorry I said what Sharon told me to say." He said that although the letter on its face did not say that the victim had lied, the petitioner's family had told the petitioner that the victim had changed her story. He admitted that he did not interview the victim.

The petitioner's trial counsel testified as follows: He had been the Coffee County Public Defender for over ten years. He never told the petitioner that he would refuse to cross-examine witnesses or that the petitioner would get life in prison if the case went to trial. He explained to the petitioner the offense with which he was charged and the potential sentencing ranges he faced, including that if convicted of aggravated sexual battery, he would be required to serve eighty-five percent of his sentence. He gave the petitioner a sentencing chart, a copy of the statute, and a copy of everything that was in the district attorney's file. He talked with the petitioner about the victim's subsequent letter, although he questioned whether the victim wrote it. The petitioner admitted to him that he touched the victim on her vagina over her clothes because he was trying to teach her a lesson about what could happen to her if she did not behave.

The public defender testified that the original plea offer was for eight years at eighty-five percent but that, in part because of the letter, he was able to negotiate an offer for ten years at forty-five percent. He said that he did not file a motion for discovery because the district attorney had an open file policy. He stated that after talking to Officer Alexander, he believed a motion to suppress would have been unsuccessful. He testified that he told the petitioner he thought the state had enough evidence to get a conviction but that he did not pressure the petitioner into pleading guilty. He stated that the petitioner seemed to understand everything that they did.

On cross-examination, the petitioner's counsel testified that he did not issue any subpoenas for the preliminary hearing. He stated that he discussed the case with the petitioner, the petitioner's wife, the victim's mother, and Officer Alexander. He said that he discussed the victim's letter with the petitioner but not with the victim or with "Sharon," whom he could not remember. He said that the petitioner told him that he did not do what was in his statement. However, the petitioner stated that he touched the victim's vagina through her clothes. He told the petitioner that this fact made no difference in defending against a charge of aggravated sexual battery.

Based upon this evidence, the trial court found that the petitioner's counsel was not deficient. The court also found that the petitioner entered his guilty plea knowingly and voluntarily.

# I.  VOLUNTARINESS OF THE GUILTY PLEA

The petitioner argues that he did not enter his guilty plea voluntarily and intelligently because the trial court failed to inform him in open court, as required by Tenn. R. Crim. P. 11(c)(1), of the nature of the charges to which he was pleading, the mandatory minimum penalty, and the possible maximum penalty.  This issue is without merit.

We note that this issue was not raised in the petitioner's post-conviction petition or at the post-conviction hearing.  Moreover, only constitutional errors can be addressed in a post-conviction proceeding.  See Tenn. Code Ann. § 40-30-203; Overton v. State, 874 S.W.2d 6, 12 (Tenn. 1994).  The trial court's mere failure to explain the minimum and maximum penalties to the petitioner in open court is not constitutional error.  See Sneed v. State, 942 S.W.2d 567, 568-69 (Tenn. Crim. App. 1996).  Finally, the record reveals that the trial court did inform the petitioner in open court of the nature of the charge to which he pled.

# II.  INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner also contends that his guilty plea was involuntary in that it resulted from the ineffective assistance of counsel.  The petitioner argues that his attorney coerced him into pleading guilty, telling him that he would not cross-examine witnesses and that the petitioner would receive life in prison if the case went to trial.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993).  The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).  When a petitioner claims that ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial.  Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases.  Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973).  Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>see</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner has the burden in the trial court to prove by clear and convincing evidence the factual allegations that would entitle him to relief. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. <u>Jehiel Fields v. State</u>, No. E1999-00915-SC-R11-PC, Bradley County, slip op. at 6 (Tenn. Feb. 20, 2001) (for publication). We review the trial court's conclusions of law – such as whether counsel's performance was deficient or whether that deficiency was prejudicial – under a purely <u>de novo</u> standard. <u>Id.</u> at 6-7.

In the present case, the trial court found that the petitioner's attorney represented him effectively, noting that the petitioner's attorney investigated the case and discussed with the petitioner the state's theory, his possible defenses, and the possible sentences that he could receive. The petitioner's attorney stated that he never told the petitioner that he would not cross-examine witnesses and that the petitioner would receive life in prison if the case went to trial. Questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court. <u>Henley v. State</u>, 960 S.W.2d 572, 579 (Tenn. 1997). We conclude that the trial court properly found that the petitioner's attorney was not deficient.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the petitioner's post-conviction petition.

_____
JOSEPH M. TIPTON, JUDGE